UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 08-21917-CIV-GOLD/MCALILEY

BANK OF AMERICA, N.A.,

    Plaintiff,

v.

THE UNITED CITIES GROUP, INC.,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTIONS FOR SANCTIONS**

Pending before this Court are Plaintiff's Corrected Motion for Sanctions Against Defendant Due to Violation of Preliminary Injunction [DE 30], and Amended Motion for Sanctions Against Defendant and Its Member/Agent/Representatives Angel Cruz, Gladstone Gardner and H. William Marrero Due to Violations of Preliminary Injunction [DE 40].[1] Plaintiff Bank of America seeks to have the Court hold Defendant The United Cities Group, Inc. (TUC), a Florida corporation, and its representatives, in civil contempt for violation of the Preliminary Injunction entered in this case, and asks the Court to impose sanctions for such contempt. For the reasons that follow this Court recommends that Plaintiff's Motions be granted in part.

---

[1] These matters were referred to the undersigned by the Honorable Alan S. Gold. [DE 33, 43].

**I.      Background**

Plaintiff filed its Complaint on July 8, 2008, requesting that the Court enter a temporary restraining order against TUC. [DE 1]. The Honorable Ursula Ungaro granted Plaintiff's request and entered the temporary restraining order on the same date. [DE 6]. Thereafter, the Honorable Alan S. Gold ordered briefing and set procedures for a preliminary injunction hearing. [DE 7].

Judge Gold held the preliminary injunction hearing on July 25, 2008. William Marrero, Angel Cruz and Gladstone Gardner attended the hearing as representatives of TUC. However, since neither is an attorney, and a corporation must be represented by counsel, TUC was not represented at the hearing. [*See* DE 24]. At the conclusion of the hearing, Judge Gold ruled from the bench granting the Preliminary Injunction in the presence of Messrs. Marrero, Cruz, and Gardner. [DE 23]. The Order Granting Motion for Preliminary Injunction was issued that same day, and the Court made the following findings of fact:

> TUC is an organization which has attempted to create its own laws and banking system, otherwise known as the TUC Private Currency Office. TUC created "drafts" drawn on it's own "bank" and then attempted to deposit the drafts into accounts with Bank of America held by TUC's member organizations, Orlando Escrow Services, Inc. and Miami Nights Corp. When these drafts were detected as fraudulent, Plaintiff returned them unpaid.
>
> * * *
>
> After the drafts were returned unpaid, TUC recorded its "Notice of Lodgement" and "Notice and Demand," referencing Bank of America branches in Perrine and Pinecrest, with the Clerk of Courts for Miami-Dade County, claiming more than $15 billion dollars. TUC contacted the Miami-Dade Police Department and reported that it would be serving Bank of

2

> America with notice of this "lien." On July 3, 2008, Angel Cruz identified himself as TUC's "Chairman" and presented ... the Bank of America Perrine branch manager, with the notices. He told her that if Bank of America did not "fix this" before July 8, 2008, they would return with the Sheriff's Department and no branch associates would be allowed inside.
>
> * * *
>
> On the morning of July 8, 2008, approximately twenty individuals with TUC arrived at the Perrine branch of Bank of America. Some of these individuals were armed, and they blocked access to the bank by customers and employees. Perrine branch Assistant Manager David Dixon called the police. When the police arrived, Dixon approached TUC leader Angel Cruz and asked that the TUC members leave the bank's premises. Cruz informed Dixon that he was there to foreclose on the bank and showed Dixon copies of a "Final Notice of Eviction" and "Right to Attach Order and Order for Issuance of Writ of Attachment." Although Cruz told Mr. Dixon that these had been executed by a federal district court judge and that TUC had the right to foreclose on the property, the documents had not been executed by any legal authority.

[DE 24, pp. 4-5].

Based on these facts, the Court found that Plaintiff had satisfied the requirements for preliminary injunctive relief and enjoined TUC and "its affiliates, subsidiaries, members, agents, servants, employees, representatives, attorneys, and all other persons acting in concert or participating with TUC or on its behalf" from the following conduct:

> attempting to defraud Bank of America, or otherwise harassing Bank of America in any manner, including but not limited to attempting to "seize" or "foreclose" Bank of America property, or in any other manner attempting to levy execution based upon TUC's "Notice of Lodgement," "Notice and Demand," "Notice of Eviction," and "Writ of Attachment," or any other writs or notices not authorized by a court of competent jurisdiction pursuant to the laws of the United States or the State of Florida.

[DE 24, pp. 11-12].

3

After the Court entered the Preliminary Injunction, TUC continued to present fraudulent drafts, or checks, to the Plaintiff Bank.[2] Specifically, on July 28, 2008, Plaintiff received four fraudulent drafts all purportedly drawn from "The United Cities Private Bank." [DE 30-1], which led Plaintiff to file, on August 5, 2008, its Corrected Motion for Sanctions Against Defendant Due to Violation of Preliminary Injunction. [DE 30].[3] On August 6, 2008, this Court issued an Order setting an evidentiary hearing for August 15, 2008, on the matters raised in the Motion. [DE 31]. In the Order, this Court reminded TUC that a corporation can not appear *pro se* and must be represented by licensed counsel.[4] [*Id.*].

On August 13, 2008, Mr. Marrero called the chambers of the undersigned and stated that he had only that day received the Order scheduling the evidentiary hearing. As an accommodation to TUC, this Court agreed to cancel the evidentiary hearing, and instead conducted a telephonic status conference on August 15, 2008. Counsel for Bank of America appeared by telephone at that status conference, as did Mr. Marrero. TUC was not represented by counsel. At the status conference the Court again explained to Mr. Marrero that because he is not an attorney, he could not represent TUC in this matter, and that until TUC retained counsel on its behalf, all notice to TUC would be properly made via its

---

[2] Further, on July 29, 2008, Mr. Marrero filed a "Notice of Lodgement" with the Court, that purportedly gives notice that Mr. Marrero, who is not a party to this litigation, purchased from TUC its interests in this litigation. [DE 26].

[3] TUC continued to present fraudulent drafts to Plaintiff, even after Plaintiff filed its Motion.

[4] Judge Gold had explained this to TUC's representatives at the Preliminary Injunction hearing. [DE 24, pp. 1-2].

registered agent for service of process. However, the Court offered that, as a courtesy to Mr. Marrero, he would be included in any service of pleadings or orders in this case. The Court advised Mr. Marrero and counsel for Plaintiff that the evidentiary hearing was reset for August 25, 2008. [*See* DE 38].

On August 20, 2008 Plaintiff filed its Amended Motion for Sanctions, expanding the scope of relief it sought, asking that not only TUC, but also its agents Angel Cruz, Gladstone Gardner and William Marrero, be found in contempt of court for violating the Temporary Restraining Order and/or the Preliminary Injunction. [DE 40]. Because of the expanded nature of the relief requested, the undersigned held a telephonic status conference on August 22, 2008. [*See* DE 42]. Counsel for Plaintiff and Mr. Gardner, Vice-Chairman of TUC, appeared by telephone.[5] As for Mr. Marrero and Mr. Cruz, who had been included in the Court's notice of the status conference,[6] counsel for Plaintiff said she had been advised that they had been arrested and were in federal custody.[7]

At the status conference, Plaintiff requested that the contempt hearing be postponed. So that Messrs. Gardner, Cruz and Marrero would have a reasonable opportunity to retain counsel to represent themselves at the contempt hearing, and so as to avoid a duplication of

---

[5] At the status conference Mr. Gardner told the Court that it and the parties could communicate with himself and Angel Cruz at their's and TUC's business address and facsimile, at 147 Alhambra Circle, Suite 100, Coral Gables, Florida 33134, (305) 847-0845.

[6] A copy of the Order setting the August 22, 2008 status conference was sent to Mr. Marrero by mail and facsimile, and to Mr. Cruz by mail and email.

[7] Plaintiff's counsel later informed the Court that only Mr. Marrero had been arrested.

5

hearings (first one concerning TUC and later a hearing concerning the three individuals), this Court agreed to cancel the evidentiary hearing scheduled for August 25, 2008. The Court set a status conference for September 2, 2008, and ordered that Plaintiff, TUC and Messrs. Gardner, Cruz and Marrero appear in person to advise the Court whether they (or TUC) would be represented by counsel in this matter, and at which time the Court would inform the parties of a new date for the contempt hearing. [DE 42]. Notice was provided to each of these parties [*see* DE 42], however TUC, and Messrs. Gardner, Cruz and Marrero, failed to appear at the September 2, 2008 status conference. [*See* DE 47].

At the September 2nd status conference, counsel for Plaintiff informed the Court that Mr. Marrero remained in federal custody in the Middle District of Florida. Agents of the United States Secret Service appeared at the status conference, hoping to find Mr. Cruz, for whom they had an arrest warrant. As for Mr. Gardner, Plaintiff's counsel provided the Court with a copy of an email Mr. Gardner sent her that morning, stating that he was having difficulty retaining counsel and requesting a 60-day postponement of the contempt hearing.[8] This Court ordered TUC and Messrs. Gardner, Cruz and Marrero to appear before the Court on September 23, 2008, to show cause why they should not be held in contempt of court for violation of the Temporary Restraining Order and the Preliminary Injunction. [*See* DE 47].

This Court held an evidentiary hearing on September 23, 2008. TUC and Messrs. Gardner, Cruz and Marrero failed to appear at the hearing. Mr. Marrero remained

---

[8] Mr. Gardner later filed a motion to continue [DE 57], which this Court denied [DE 65].

6

incarcerated at that time and Plaintiff conceded that because Mr. Marrero could not defend himself, Plaintiff could not pursue the motion for contempt and sanctions against him at that time.

As for Mr. Gardner, Plaintiff's counsel represented that she had served all papers she had filed with the Court on Mr. Gardner, by mail (at the address Mr. Gardner provided in open court on August 20, 2008), facsimile and email, and that she had received delivery confirmation for the emails and facsimiles. This, combined with the fact that in the weeks leading up to the hearing Mr. Gardner had filed multiple papers with the Court, caused the Court to find that he was on full notice of the September 23, 2008 contempt hearing.

Gary T. Collins, Vice President and Investigations Manager of Corporate Investigations for Plaintiff, was the only witness at the hearing. Mr. Collins testified regarding the fraudulent drafts that were presented to Plaintiff.[9] Some drafts Plaintiff identified as fraudulent before they were processed, while others were not detected as fraudulent until they had been processed for payment. Mr. Collins explained the steps Plaintiff took to detect the fraud, and to "back out" those checks that had been processed for payment, and the costs to Plaintiff in doing so (exclusive of attorneys' fees). Mr. Collins also testified about his communications with Mr. Cruz, and said he had spoken with Mr. Cruz almost daily up until late August, 2008. However, Mr. Collins could not confirm that Mr.

---

[9] By the time of the hearing, Plaintiff had received a total of seventeen (17) drafts purportedly drawn from The United Cities Private Bank. [*See* DE 30-2; DE 34-2 through 34-6; DE 40-2; DE 50-2 through 50-11; DE 66-3 through 66-7].

7

Cruz knew that Plaintiff had filed a motion for contempt against him, individually.

At the conclusion of the hearing the Court asked Plaintiff to provide additional information regarding its communications with Mr. Cruz (to determine whether Mr. Cruz received proper notice of the motion for contempt filed against him), a more thorough itemization of its requested attorneys' fees, and additional argument in support of its motion for sanctions against Mr. Gardner, individually. Plaintiff filed its supplemental brief on October 9, 2008. [DE 72].

**II.     Analysis**

   **A.     Contempt**

Plaintiff asserts that TUC and Messrs. Cruz and Gardner should be held in contempt for violating the Preliminary Injunction. Specifically, Plaintiff argues that TUC, and Mr. Cruz acting on behalf of TUC, violated the Preliminary Injunction by presenting the fraudulent drafts to Plaintiff for payment; and that Messrs. Cruz and Gardner sent documents to Plaintiff in an effort to harass Plaintiff, in violation of the Preliminary Injunction. [DE 30, 40, 66, 72].

Civil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order and to compensate a complainant for losses sustained. *Popular Bank of Florida v. Banco Popular De Puerto Rico*, 180 F.R.D. 461, 465 (S.D. Fla. 1998). The party seeking contempt bears the initial burden of showing, by clear and convincing evidence, a willful disregard for the authority of the court through failure to comply with a

court order. *Georgia Power Co. v. Nat'l Labor Rel. Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007); *Popular Bank of Florida*, 180 F.R.D. at 465. Specifically, "[t]he clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Georgia Power Co.*, 484 F.3d at 1291. Once a prima facie case is established, the burden shifts to the contemnor to produce detailed evidence to explain its noncompliance. *Popular Bank of Florida*, 180 F.R.D. at 466.

The prohibitions of the Preliminary Injunction expressly extended beyond TUC to include its "agents . . . representatives . . . and all other persons acting in concert or participating with TUC or on its behalf. . . ." [DE 24, p. 11]. There is no question that Mr. Cruz, who held himself out as Chairman of TUC, and Mr. Gardner who represented himself as Vice-Chairman, at the time of their disputed conduct, could come within the ambit of the Preliminary Injunction, if they engaged in the conduct prohibited by that Order.

Established precedent endorses this extension of liability beyond the defendant named in a preliminary injunction. "Successors and assigns" of an enjoined party can be held liable for contempt and damages flowing from failure to abide by an injunction. *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 982 (11th Cir. 1986) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945). "Successors and assigns may . . . come within the description of persons in active concert or participation with [a defendant] in the violation of an injunction. If they are, by that fact they are brought within [the] scope of contempt proceedings by the rules of

9

civil procedure [Rule 65(d)]." *Id.* Further, the Supreme Court has held that injunctions may be enforced by contempt proceedings "against the corporation, its agents and officers and those individuals associated with it in the conduct of its business . . . ." *Id.* (citing *Walling v. Reuter Co.*, 321 U.S. 671, 674 (1944)).

Before this Court can reach the question whether Mr. Cruz or Mr. Gardner violated the Preliminary Injunction, it must first determine whether they received notice of the contempt proceedings. "To have sufficient notice of a contempt hearing, an individual needs adequate notice and time for preparation." *United States v. McAnlis*, 721 F.2d 334, 337-8 (11th Cir. 1983) (citations omitted) (finding that the requirements of criminal contempt proceedings also apply to civil contempt proceedings).

There is no question that Mr. Gardner was aware that he was the subject of these contempt proceedings. Mr. Gardner appeared telephonically at status conferences and he filed papers with the Court. Moreover, this Court mailed its orders that gave notice of these proceedings to the mailing address he provided [*See* DE 42, 47], and Plaintiff properly served him with its papers.

In contrast, Mr. Cruz never appeared before the Court (after the Preliminary Injunction hearing itself), and although Mr. Gardner represented that Mr. Cruz could be reached at the same mailing address as Mr. Gardner [*see* DE 42], the Court has no confirmation that Mr. Cruz in fact received any notice of the contempt proceedings. Plaintiff asserts that Mr. Cruz communicated with one of its representatives, Mr. Collins, and

conveyed a settlement offer; from that Plaintiff would have this Court infer that Mr. Cruz "was aware of the status of the court proceedings." [DE 72, p. 3]. The Court, however, is unwilling to conclude that a person should be found in contempt of court, and sanctioned, when that person did not appear at the contempt hearing and the Court can only speculate that he received notice of the hearing. For this reason, this Court does not recommend that Mr. Cruz be found in contempt of the Preliminary Injunction, or that sanctions be imposed on him.

Finally, as for TUC, the record is clear that it received clear and repeated notice of these contempt proceedings [*see* DE 31, 38, 41, 42, 47], and the Court gave TUC and Mr. Gardner repeated opportunities to obtain counsel (or for Mr. Gardner to represent himself at the hearing). Having found adequate notice to TUC and Mr. Gardner, the Court turns to the question of whether either should be found to be in contempt of the Preliminary Injunction.

### 1.     The Preliminary Injunction was valid and lawful

The Honorable Alan S. Gold entered the Preliminary Injunction on July 25, 2008, after holding an evidentiary hearing and making all the necessary findings, and meeting the requirements of Rule 65, Fed. R. Civ. P. Accordingly, the Preliminary Injunction is valid and lawful.

### 2.     The Preliminary Injunction was clear and unambiguous

The Preliminary Injunction specifically enjoins TUC and its representatives and "all other persons acting in concert or participating with TUC or on its behalf" from:

>attempting to defraud Bank of America, or otherwise harassing Bank of America in any manner including but not limited to attempting to "seize" or "foreclose" Bank of America property, or in any other manner attempting to levy execution based upon TUC's "Notice of Lodgement," "Notice and Demand," "Notice of Eviction," and "Writ of Attachment," or any other writs or notices not authorized by a court of competent jurisdiction pursuant to the laws of the United States or the State of Florida.

[DE 24, p. 11]. The language of the injunction is clear, that TUC and its representatives can not present fraudulent drafts to the Plaintiff bank.

Plaintiff also argues that the Preliminary Injunction, to the extent that it bars TUC and persons acting on its behalf from "otherwise harassing" Plaintiff, is "broad enough to clearly and unambiguously" prohibit Mr. Gardner from sending Plaintiff various documents purportedly from "The Supreme Court of the United Cities Group."[10] Plaintiff argues that these documents, some of which Mr. Gardner also filed with this Court,[11] were intended to harass Plaintiff and perpetuate TUC's fraudulent scheme, and that Gardner and TUC therefore violated the Preliminary Injunction. [DE 72, p. 9]. This Court can not agree.

"In determining whether a party is in contempt of a court order, the order is subject to reasonable interpretation, though it may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard." *Georgia Power Co.*, 484 F.3d at 1291 (citing

---

[10] Mr. Gardner sent a summons and complaint, *ex parte* motion for emergency hearing signed by Mr. Gardner and granted by the chief judge of the TUC court, notice of hearing at the TUC court, "Notice of Lodgement," and other documents. A complete list of the documents that Mr. Gardner sent is found in Plaintiff's Second Supplemental Memorandum of Law in Support of its Amended Motion for Sanctions. [*See* DE 72, pp. 6-7].

[11] *See* DE 52, 53, 54, 55, 56.

*Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002). Any ambiguities or uncertainties in such a court order must be construed in a light favorable to the person charged with contempt. *Id.* Here, the language of the Preliminary Injunction does not clearly prohibit Mr. Gardner from sending Plaintiff documents that were purportedly issued from TUC's "court." While TUC does not, in fact, have a bona fide court, and the documents are admittedly, at minimum, misleading, it is not clear from the language of the Preliminary Injunction that sending these documents are either fraudulent or harassing, and therefore prohibited. Accordingly, this Court does not recommend that Mr. Gardner be found to be in contempt of the Preliminary Injunction.

Having concluded that neither Mr. Cruz nor Mr. Gardner should be held in contempt, this Court is left to determine whether Plaintiff met its burden to show that TUC had the ability to comply the Preliminary Injunction. *Georgia Power Co.*, 484 F.3d at 1291.

### 3.     **TUC had the ability to comply with the Preliminary Injunction**

Mr. Cruz, as Chairman of TUC, and Mr. Gardner, as Vice-Chairman of TUC, were present at the Preliminary Injunction hearing on July 25, 2008, when the Court announced its ruling and issued the Preliminary Injunction [*see* DE 24], and thereafter Plaintiff properly gave notice to TUC of its motions for contempt, via TUC's registered agent for service of process. Accordingly, there is no doubt that TUC had notice of the Preliminary Injunction.

The Preliminary Injunction specifically enjoined TUC from attempting to defraud Plaintiff, nevertheless after the injunction was issued TUC, acting through its officers and

13

agents, presented numerous fraudulent drafts to Plaintiff. [*See* DE 30-2; DE 34-2 through 34-6; DE 40-2; DE 50-2 through 50-11; DE 66-3 through 66-7]. These fraudulent drafts were presented in violation of a clear and unambiguous order prohibiting TUC from engaging in fraud.  This Court finds that Plaintiff has presented clear and convincing evidence that TUC willfully disregarded the authority of this Court by failing to comply with the Preliminary Injunction.  TUC was not represented at the hearing and thus did not present any evidence to explain or justify its noncompliance, and this Court can find no reason to believe that TUC could not easily comply with the Preliminary Injunction.  Accordingly, this Court recommends that TUC be found in contempt of the Preliminary Injunction and that TUC be ordered to compensate Plaintiff for the damages it suffered as a result of TUC's noncompliance.

**B.     Remedy**

    **1.     Costs**

Plaintiff asserts that its employees had to be diverted from their regular duties to individually handle each fraudulent draft it received. [Sixth Affidavit of Gary T. Collins, DE 72-3].  The cost to Plaintiff is quantified by calculating the time its employees devoted to these tasks.  Specifically, Plaintiff estimates that each fraudulent draft that it processed, and later had to "back out," cost Plaintiff approximately $1,000.[12]  [DE 72-3, pp. 3-4].  There

---

[12] Plaintiff calculated this amount first by determining the hourly rate of Mr. Collins and the employees involved in the receiving, processing, and correcting the fraudulent drafts, and multiplying it with the number of hours of additional work that had been created. [Sixth Affidavit of Gary T. Collins, DE 72-3].

were seven fraudulent drafts that Plaintiff processed [*see* DE 72-3, paragraph 7], at a total cost of $7,000.

As for the fraudulent drafts detected upon receipt at the bank (before being processed), Plaintiff asserts that it incurred costs related to detecting the drafts, and sending correspondence regarding the returned drafts. [Sixth Affidavit of Gary T. Collins, DE 72-3]. Plaintiff asserts that each of these drafts cost it approximately $100 - $120.[13] Ten drafts fell into this category [*see* DE 72-3, paragraph 7], which Plaintiff represents cost it a total of $1,000.[14]

Accordingly, this Court recommends that TUC compensate Plaintiff for the cost of its noncompliance with the Preliminary Injunction, in the amount of **$8,000.**

### 2. Attorneys' Fees and Costs

Plaintiff also requests that the Court award its attorneys' fees and costs that were necessary to obtain compliance with the Preliminary Injunction. When deciding the amount of attorneys' fees that should be awarded the court must determine the number of hours reasonably expended, and multiply those hours by a reasonable hourly rate, which results in a "lodestar" amount. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). *See also Norman v. Housing Auth. of the*

---

[13] Plaintiff calculated this figure by first, taking the total cost estimated for each fraudulent draft that was processed ($1,000), and second, subtracting the cost for work created from having to "back out" the processed drafts. [Sixth Affidavit of Gary T. Collins, DE 72-3].

[14] Given that Plaintiff did not specify which drafts cost over $100, this Court multiplied the low end of the estimate ($100) by the number of drafts (10).

*City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The moving party bears the burden of documenting its request with specific and detailed evidence of the time spent on different claims and in support of the requested hourly rate. *Norman*, 836 F.2d at 1303.

### a.     Hours reasonable expended

In determining the hours reasonably expended, a court must deduct "excessive, redundant or otherwise unnecessary hours." *Id.* at 1301.

Plaintiff asserts that its counsel spent a total of 96.2 hours litigating its motions for sanctions.[15] In support, Plaintiff submitted the affidavit of its counsel, Christi R. Adams, Esq. [DE 72-14]. Attached to Ms. Adam's affidavit are time records, which describe the work performed, the amount of time devoted to each task, and the lawyer who performed the task. [*Id*].

This Court has reviewed the time records and finds that the hours claimed were reasonably incurred in litigating the motions for sanctions and necessary to obtain compliance with the Preliminary Injunction, with the exception of 15.3 hours that were not supported by a detailed description of the work performed,[16] and 3 hours that were not

---

[15] This Court added the number of hours asserted for each attorney: 57.1 hours by Christi Adams, 16.9 hours by Mary Leslie Smith, and 22.2 hours by Samantha Powers. [DE 72-14, paragraph 4].

[16] The Court deducts the following entries with the description "Original entry included attorneys' mental impressions": August 4, 2008 (2.0 hours by C. Adams); August 4, 2008 (.2 hours by C. Adams); September 1, 2008 (.4 hours by M. Smith); September 1, 2008 (.1 hours by M. Smith); September 2, 2008 (.5 hours by M. Smith); September 3, 2008 (.2 hours by M. Smith); September 4, 2008 (2.3 hours by S. Powers); September 4, 2008 (.2 hours by M. Smith); September 8, 2008 (.2 hours by C. Adams); September 10, 2008 (7.8 hours by C. Adams); September 11, 2008

necessary to obtain compliance with the Court's Order.[17]

### b. Reasonable hourly rate

The second half of the lodestar is the hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *Norman*, 836 F.2d at 1299. The Court "is itself an expert on the question [of a reasonable hourly rate] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1303).

Plaintiff seeks an hourly rate of $398.00 for senior counsel Christi Adams, $408.00 for partner Mary Leslie Smith, and $314.00 for associate Samantha Powers. [DE 72-14]. This Court has reviewed the qualifications of each of these attorneys [*see* DE 72-14, paragraph 4], and concludes that the following hourly rates are reasonable for purposes of fairly compensating Plaintiff here: $275 for Ms. Adams, $325 for Ms. Smith, and $200 for Ms. Powers.

Accordingly, the hours reasonably expended, multiplied by the reasonable hourly rate, result in the following lodestar amount:

---

(1.4 hours by S. Powers). [DE 72-14, pp. 6-10]

[17] The Court deducts the following hours by C. Adams: 2.5 hours on August 25, 2008 for "Research real estate fraud for G. Collins;" .2 hours on September 2, 2008 for "Review correspondence from Mr. Gladstone Gardner;" and .3 hours on September 4, 2008 for "Review Gardner's notice of conflict filed with the Court." [DE 72-14, pp. 8-9].

| Lawyer | Hours | Rate | Total |
|---|---|---|---|
| Christi Adams | 43.9 | $275/hr | $12,072.50 |
| Mary Leslie Smith | 15.5 | $325/hr | $5,037.50 |
| Samantha Powers | 18.5 | $200/hr | $3,700.00 |
|  |  | **Lodestar Amount** | **$20,810.00** |

  **c.**  **Costs**

Plaintiff asserts that it incurred $98.60 in photocopy charges, but does not give any detail, *i.e.* charge per page, for this cost. Accordingly, Plaintiff is not entitled to recover this cost.

## III. Recommendations

For the reasons stated above, this Court recommends:

That the Court **GRANT IN PART** Plaintiff's Corrected Motion for Sanctions Against Defendant Due to Violation of Preliminary Injunction [DE 30], and Amended Motion for Sanctions Against Defendant and Its Member/Agent/Representatives Angel Cruz, Gladstone Gardner and H. William Marrero Due to Violations of Preliminary Injunction [DE 40], and enter judgment in favor of Plaintiff Bank of America against Defendant The United Cities Group, Inc. for: (1) costs in the amount of **$8,000.00**, and (2) attorneys' fees and costs in the amount of **$20,810.00**.

## IV. Objections

Pursuant to Magistrate Rule 4(a), the parties may file written objections to this Report

18

and Recommendation with the Honorable Alan S. Gold **no later than March 30, 2009**. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein.  *See RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY SUBMITTED in chambers at Miami, Florida, this 26th day of March, 2009.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Alan S. Gold

All counsel of record

Registered agent for Defendant,
United Cities Group, Inc.:
Donna-Marie Johnson
147 Alhambra Circle
Suite 100
Coral Gables, Florida 33134

Rafael Ulloa, President
Benito Correra, Treasurer and Registered Agent
International Consortium of Global Alliances, Inc.
f/k/a The United Cities Group, Inc.
9555 N. Kendall Dr., Suite 100
Miami, FL 33176